UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHRISTINE K.,

              Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.

_____

**DECISION AND ORDER**

1:23-CV-00422 EAW

## <u>INTRODUCTION</u>

Represented by counsel, plaintiff Christine K. ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' cross motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Dkt. 6; Dkt. 10). For the reasons discussed below, Plaintiff's motion (Dkt. 6) is granted to the extent that the matter is remanded for further administrative proceedings, and the Commissioner's motion (Dkt. 10) is denied.

- 1 -

## BACKGROUND

Plaintiff protectively filed her applications for DIB and SSI on October 30, 2020. (Dkt. 5 at 21, 280-89, 290-96).[1]  In her applications, Plaintiff alleged disability beginning Mach 17, 2020.  (*Id.* at 21, 281, 290).  Plaintiff's applications were initially denied on January 28, 2021, and on reconsideration on April 15, 2021.  (*Id.* at 21, 157-58, 164-84). At Plaintiff's request, a telephone hearing was held before administrative law judge ("ALJ") Moises Penalver on August 24, 2021.  (*Id.* at 42-82).  On March 17, 2022, the ALJ issued an unfavorable decision.  (*Id.* at 21-36).  Plaintiff requested Appeals Council review; her request was denied on April 6, 2023, making the ALJ's determination the Commissioner's final decision.  (*Id.* at 6-12).  This action followed.

## LEGAL STANDARD

### I.  District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept

---

[1]    When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.    Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of N.Y.*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

- 3 -

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* §§ 404.1520(d), 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id.* §§ 404.1509, 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* §§ 404.1520(g), 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

## I. The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920. Initially, the ALJ

determined that Plaintiff meets the insured status requirements of the Act through December 31, 2022. (Dkt. 5 at 24). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since March 17, 2020, the alleged onset date. (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of cervical degenerative disc disease without cord compression; lumbar degenerative disc disease without central stenosis or nerve root impingement; left shoulder derangement; obesity (level II); and adjustment disorder with mixed depressed and anxious mood. (*Id.*). The ALJ also found that Plaintiff suffered from the non-severe impairments of mild left foot degenerative joint disease, gastroesophageal reflux disease, hyperlipidemia, and mild intermittent asthma. (*Id.*). He also concluded that her impairment of chronic obstructive pulmonary disease was not a medically determinable impairment. (*Id.* at 25).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.*). In particular, the ALJ considered the requirements of Listings 1.15, 1.16, 1.18, 12.04, and 12.06 in reaching his conclusion. (*Id.* at 25-26).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with the following non-exertional limitations:

> [Plaintiff] can: lift or carry up to 10 pounds occasionally; stand or walk up to two hours total in an eight-hour workday; sit up to six hours in a workday, with regularly scheduled breaks; push or pull occasionally with the left upper extremity; never climb ladders, ropes or scaffolds and never crawl; occasionally climb ramps/stairs and occasionally stoop, crouch and kneel. In addition, [Plaintiff]: must avoid constant rotation, flexion and extension of

the neck; is limited to frequent reaching, with the non-dominant left upper extremity; must avoid concentrated and frequent exposure to extreme heat; and must avoid concentrated and frequent exposure to dangerous moving machinery and unprotected heights. Further, [Plaintiff]: is limited to low stress jobs, defined as positions with no more than occasional changes in the work setting; must avoid fast-paced work environments (defined as constant activity with work tasks performed sequentially in rapid succession); and would be off task up to 10% of the workday, in addition to regularly scheduled breaks.

(*Id.* at 26-27). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 34).

At step five, the ALJ relied on the testimony of a vocational expert to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of identification clerk, appointment clerk, and receptionist. (*Id.* at 35). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 36).

## II.    Remand for Further Administrative Proceedings is Required

Plaintiff asks the Court to reverse the Commissioner's decision, or in the alternative remand the matter for further administrative proceedings, arguing that: (1) the ALJ's step five finding failed to show transferable skills; (2) the RFC was not supported by substantial evidence because it contained a highly specific limitation unsupported by medical evidence; and (3) the ALJ's assessment of the medical opinion evidence did not comport

- 6 -

with the regulations.  (Dkt. 6-1 at 12-26).  For the following reasons, remand for further administrative proceedings on the second ground is required.

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  It is well-settled that an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision."  *Id.*  However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings."  *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted).  In other words:

> An ALJ is prohibited from 'playing doctor' in the sense that 'an ALJ may not substitute his own judgment for competent medical opinion. . . .'  This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.

*Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (citations omitted).  "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence."  *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted).  However, at bottom, "[a]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear."  *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021).

The ALJ determined that Plaintiff had the RFC to perform a reduced range of sedentary work that included time off-task of up to 10 percent of the workday in addition

to normal breaks.  Plaintiff argues this highly specific RFC was not adequately tied to the evidence of record.  On these facts, the Court agrees.

In the decision, the ALJ considered medical opinion evidence from several sources. Specifically, he addressed a January 2021 consultative examination by Abrar Siddiqui, M.D., who assessed Plaintiff with mild limitations in her ability to stand, bend, lift, push, pull, and carry heavy objects.  (Dkt. 5 at 948-51).  The ALJ found Plaintiff somewhat more limited than Dr. Siddiqui opined in light of other information in the record but concluded that the opinion was partially persuasive because it was reasonably supported and consistent with the record in concluding that while strenuous physical activity would be challenging, Plaintiff remains capable of performing a meaningful range of sedentary work activity.  (*Id.* at 32).

The ALJ also considered the physical assessment opinions of the State agency medical consultants who concluded that Plaintiff has a capacity for a reduced range of work between the light and sedentary levels with postural limitations.  (*Id.* at 85-101, 102-18, 119-37, 138-56).  The ALJ found these opinions partially persuasive, reasoning that the opinions were somewhat supported and fairly consistent with the record, but that "the substantial evidence of record detailed above demonstrates a somewhat higher degree of limitation, particularly with respect to head movements, reaching with the left arm, environmental precautions, and the impact of the claimant's symptoms on her ability to remain on task, than determined by the State agency consultants."  (*Id.* at 32).

The ALJ considered the opinions of Plaintiff's treating physician's assistant Amy Albert, PA-C, and other providers at Sherban Orthopedics, who indicated that Plaintiff was

limited to lifting 10 pounds. The ALJ found these opinions partially persuasive to the extent consistent with the RFC, but otherwise somewhat vague and lacking in specificity. He also addressed PA Albert's July 2021 questionnaire. (*Id.* at 1114-18). In it, PA Albert noted that she had been treating Plaintiff every 1-3 months since December 2017. (*Id.* at 1114). PA Albert noted that Plaintiff suffered from pain, burning, numbness, and tingling in her neck, low back, and upper and lower extremities that is constant but worse with activity. (*Id.*). She indicated that the clinical findings and objective signs supporting her opinions included cervical and lumbar MRIs which revealed disc herniations, sensory deficits in Plaintiff's bilateral upper extremities, and motor deficits in her bilateral upper and lower extremities. (*Id.*). PA Albert opined that Plaintiff's pain or other symptoms could be expected to interfere with her attention and concentration frequently, which is specifically defined in the form as 34% to 66% of an 8-hour workday. (*Id.* at 1115). She found Plaintiff incapable of even low stress jobs based on her 10 out of 10 pain level. (*Id.*). PA Albert opined that Plaintiff would need unscheduled breaks four times per hour of a five-minute duration and would likely be absent from work more than four days per month due to her impairments or treatment. (*Id.* at 1116-117). The ALJ found PA Albert's opinions only partially persuasive, reasoning that "[t]he rather extreme degree of functional restriction indicated by Ms. Albert is simply not fully supported by, or consistent with, the substantial evidence of record detailed above, including progress records from her own facility, Sherban Orthopedics, showing overall moderate findings, as well as slow but steady gait, negative straight leg raising bilaterally, and fairly intact strength and sensation, particularly on the right side. Thus, Ms. Albert's opinion is found only partially persuasive,

to the extent consistent with the findings herein in indicating the claimant would likely be unable to sustain work activities more than a relatively modest degree of physical activity." (*Id.* at 33).

The ALJ also addressed the opinion of consultative examiner Susan Santarpia, Ph.D. (*Id.* at 953-56). Dr. Santarpia opined that Plaintiff "presents as able to understand, remember, or apply simple, as well as complex directions and instructions, use reason and judgment to make work-related decisions, interact adequately with supervisors, coworkers, and the public, and maintain personal hygiene and appropriate attire within normal limits. Moderate impairment is demonstrated in sustaining concentration and performing a task at a consistent pace, sustaining an ordinary routine and regular attendance at work, regulating emotion, controlling behavior, and maintaining well-being, being aware of normal hazards and taking appropriate precautions." (*Id.* at 955). The ALJ found Dr. Santarpia's opinions partially persuasive, explaining that "Dr. Santarpia's assessment is expressed in somewhat vocationally vague terms and suggests a somewhat higher degree of restriction in some respects, such as sustaining ordinary routine and regular attendance, than supported by the overall record, including a lack of specialized mental health treatment and the largely benign mental status exam findings of Dr. Santarpia's own evaluation and primary care treatment records. Nonetheless, Dr. Santarpia's assessment overall is fairly supported and consistent with the substantial evidence of record in suggesting a meaningful, but not

profound, degree of mental limitation, with an adequate capacity for basic mental work-related activities." (*Id.* at 33).

In summary, the ALJ noted that:

> the longitudinal record also contains various instances of examining or treating providers expressing their assessments of the claimant's disability in terms of percentages or conclusory phrases (i.e., 50% disabled 100% disabled, etc.) (Exhs. 2F-3F; 6F; 14F; 16F; 19F; 22F). However, such statements are inherently neither valuable nor persuasive, as they are vague, lacking specific function-by-function assessments, and conclusory, relating to the issue of disability reserved to the Commissioner.

(*Id.* at 33-34).

As noted, in the RFC, the ALJ determined that Plaintiff "would be off task up to 10% of the workday, in addition to regularly scheduled breaks." (*Id.* at 27). The only explanation offered by the ALJ relating to off-task time was as follows:

> The record also establishes that, along with physical symptoms of pain, the claimant's mental impairments would limit her to work activities with a reduced degree of work setting changes she might find stressful and to work activities that do not involve fast-paced demands, while also contributing to a need to be off-task for a portion of the workday, to account for periods of particularly intense symptomatology. These limitations are accommodated by the above residual functional capacity, to the degree established by the substantial evidence of record.

(*Id.* at 28). But while this explanation may account for the ALJ's determination that off-task time was warranted, it does not explain how he reached the 10% off-task limitation, nor is it otherwise apparent from the record.

It is well-settled that an RFC finding is administrative in nature and, for that reason, the ALJ is not required to adopt any one medical opinion in its entirety; rather, the ALJ's RFC finding must be supported by substantial evidence in the record. *See Matta*, 508 F. App'x at 56. Further, because Plaintiff's claim was filed after March 27, 2017, the new

regulations—which provide new guidelines for the ALJ's evaluation of opinion evidence—apply to Plaintiff's disability claim. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01, at *5844 (Jan. 18, 2017). For example, the ALJ is no longer required to give "controlling weight" to a treating physician's opinion. *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). However, the new regulations did not relieve the ALJ of his general duty to develop the medical record, or otherwise abrogate the general principle that an administrative hearing is not adversarial in nature.

As noted, the only medical opinion in the record expressly relating to time off-task was from PA Albert, who opined that Plaintiff would need to be off-task frequently, defined as 34% to 66% of an 8-hour workday. (Dkt. 5 at 1115). Although the ALJ concluded that PA Albert's opinions were not fully supported by other evidence of record, he did not specifically address PA's Albert's opinion as to time off-task in crafting the RFC. That said, "an RFC determination, even one containing highly specific limitations, is not fatally flawed merely because it was formulated absent a medical opinion or specific limitation." *Tiffany L. v. Comm'r of Soc. Sec.*, No. 1:20-CV-0677 (WBC), 2021 WL 3145694, at *4 (W.D.N.Y. July 26, 2021) (citing *Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109-10 (2d Cir. 2020)); *see also Michael K. v. Comm'r of Soc. Sec.*, No. 1:20-cv-1467-DB, 2022 WL 3346930, at *10 (W.D.N.Y. Aug. 12, 2022) ("[J]ust because there is no explicit opinion or subjective complaint that mirrors an RFC limitation does not mean there was an error."); *Jennifer O. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1474 (WBC), 2022 WL 2718510, at *4 (W.D.N.Y. July 13, 2022) ("[A]n RFC determination, even one

containing highly specific limitations, is not fatally flawed merely because it was formulated absent a medical opinion.").

Rather, what is important is that the written determination make clear how the ALJ arrived at the specific limitation to ensure it was not the result of the ALJ's speculation or conjecture. For example, in *Cosnyka v. Colvin*, the ALJ found that the plaintiff would be "off-task" for ten percent of the workday based on the orthopedic examiner's opinion that the plaintiff would need "regular comfort breaks," but did not indicate the length of those breaks. 576 F. App'x 43, 46 (2d Cir. 2014). The Second Circuit found that determination was not supported by the record, and that a specific RFC assessment must be based on evidence in the record, not on an "ALJ's own surmise." *Id.* As the Second Circuit reiterated in *Johnson v. Colvin*, the error in *Cosnyka* was not that the ALJ assigned a particular percentage range, but instead that there was no support for the ALJ's determination that the 10% off-task limitation translated to six minutes out of every hour rather than some other amount of time that equaled 10% of the workday. *See* 669 F. App'x 44, 47 (2d Cir. 2016) (summary order). In other words, while there must be evidentiary support for the ALJ's specific limitations, that support need not be in the form of a medical opinion as long as the Court can glean the ALJ's rationale from the written determination. *See Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109 (2d Cir. 2020) (medical opinion providing specific restrictions reflected in the RFC is not required if the record contains sufficient evidence from which an ALJ can assess the RFC); *see also Joshua K. v. Comm'r of Soc. Sec.*, No. 19-cv-66-FPG, 2021 WL 235886, at *2-3 (W.D.N.Y. Jan. 25, 2021) (remand required where the ALJ did not "point to any evidence in the record suggesting

why Plaintiff would be off task for this specific percentage of time," and explaining that "[s]pecific RFC assessments, like percentage of time off-task, must be based on evidence in the record," and further explaining that generalizations pointed to by the Commissioner, including that the plaintiff had normal attention and concentration examination, engaged in many activities, and attended college, "were [not] included in the ALJ's decision as support for the specific off task assessment nor do they translate into a finding that Plaintiff would be off task five percent of the day"). This explanation is particularly important where, as here, the limitation assessed by the ALJ is less restrictive than that contained in the only medical opinion on point. *See Kenneth H. v. Comm'r of Soc. Sec.*, No. 23-CV-6358-LJV, 2024 WL 5075613, at *6 (W.D.N.Y. Dec. 11, 2024) ("And in contrast to cases where the ALJ's specific finding was not error because it was more generous to the claimant than any medical opinion, . . . medical opinions here found greater limitations.").

Here, it is unclear to the Court how the ALJ settled on a ten percent off-task limitation. And not only that, but the determination of percentage in this case is particularly problematic given that at the administrative hearing, when the ALJ presented several hypotheticals to the VE, each of which contained a different off-task limitation (five percent, ten percent, and more than ten percent), the VE explained that an off-task limitation of more than ten percent would render Plaintiff unable to perform any jobs. (*See* Dkt. 5 at 74-78 ("Based on my experience and knowledge on this topic, since this issue is not addressed in the DOT, the generally accepted rate of time off task is up to and including 10% of the workday in addition to normal breaks or about six minutes per hour typically in small increments, so up to and including 10% is acceptable. Anything above that would

preclude competitive employment."); *see also Elder v. Comm'r of Soc. Sec.*, No. 18-CV-1196, 2019 WL 6320355, at *6 (W.D.N.Y. Nov. 26, 2019) ("At best . . . the ALJ's conclusion comes from whole cloth.  At worst, the conclusion responds to the vocational expert's testimony that an off-task behavior restriction of six minutes per hour—that is, one more minute of off-task behavior per hour—would be work preclusive.").  Thus, in this case, the distinction between an off-task percentage of ten percent versus one of eleven percent was outcome determinative as to Plaintiff's disability status and warranted greater explanation.  On remand, should the ALJ again assess an off-task limitation, he should identify evidence in the record supporting his conclusion in that respect.

### B.    Plaintiff's Remaining Arguments

As set forth above, Plaintiff has identified additional reasons why she contends the ALJ's decision was not supported by substantial evidence.  However, because the Court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary, the Court declines to reach these issues. *See, e.g., Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); *Morales v. Colvin*, No. 13cv06844 (LGS) (DF), 2015 WL 13774790, at *23 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may

change on these points upon remand"), *adopted*, 2015 WL 2137776 (S.D.N.Y. May 4, 2015).

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 6) is granted to the extent that the matter is remanded for further administrative proceedings, and the Commissioner's motion for judgment on the pleadings (Dkt. 10) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:      March 21, 2025
            Rochester, New York